**FILED**

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

JUN 21 2016

CLERK, U.S. DISTRICT COURT
EASTERN DISTRICT OF CALIFORNIA
BY _____
DEPUTY CLERK

| United States of America | | CASE NUMBER |
|---|---|---|
| | Plaintiff(s) | CR 16 00412 5 |
| v. | | |
| GARY DEAN SCHOONOVER | | **WARRANT FOR ARREST** |
| | | **UNDER SEAL** |
| | Defendant(s) | 1:16-mj-00071 SAB |

TO:    UNITED STATES MARSHAL AND ANY AUTHORIZED UNITED STATES OFFICER

**YOU ARE HEREBY COMMANDED** to arrest  **GARY DEAN SCHOONOVER**

and bring him/her forthwith to the nearest Magistrate Judge to answer a(n): □ Complaint    ■ Indictment
□ Information    □ Order of Court    □Probation Violation Petition    □ Violation Notice

Charging him/her with: (ENTER DESCRIPTION OF OFFENSE BELOW)

**Conspiracy to Solicit, Receive, and Pay Illegal Remuneration for Health Care Referrals;;
Illegal remunerations for Health Care Referrals;
Aiding and Abetting and Causing an Act to be Done;**

**in violation of the following Title, United States Code, Section(s):**
**18 U.S.C. § 371;42 U.S.C. § 1320a-7b(b)(2)(A); 18 U.S.C. § 2(b):**

| Kiry K. Gray | June 16, 2016    LOS ANGELES, CALIFORNIA |
|---|---|
| NAME OF ISSUING OFFICER | DATE AND LOCATION OF ISSUANCE |
| Clerk of Court | |
| TITLE OF ISSUING OFFICER   CINDY L. ORELLANA | BY    FREDERICK F. MUMM |
| SIGNATURE OF DEPUTY CLERK | NAME OF JUDICIAL OFFICER |

## RETURN

THIS WARRANT WAS RECEIVED AND EXECUTED WITH THE ARREST OF THE ABOVE-NAMED DEFENDANT AT (LOCATION)

| DATE RECEIVED | NAME OF ARRESTING OFFICER |
|---|---|
| DATE OF ARREST | TITLE |
| DESCRIPTIVE INFORMATION FOR DEFENDANT CONTAINED ON PAGE TWO | SIGNATURE OF ARRESTING OFFICER |

**WARRANT FOR ARREST**

CR – 12 (07/04)                                                                          PAGE 1 OF 2

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

| United States of America | CASE NUMBER: |
|---|---|
| Plaintiff(s) | cRR 16 00412 5 |
| v. | |
| **GARY DEAN SCHOONOVER** | **WARRANT FOR ARREST** |
| Defendant(s) | **UNDER SEAL** |

### ADDITIONAL DEFENDANT INFORMATION

| RACE: | SEX: | HEIGHT: | WEIGHT: | HAIR: | EYES: | OTHER: | |
|---|---|---|---|---|---|---|---|
| DATE OF BIRTH: **1976** | | | | | | | |
| | | SCARS, TATTOOS OR OTHER DISTINGUISHING MARKS: | | | | | |
| AUTO YEAR: | AUTO MAKE: | AUTO MODLE: | | AUTO COLOR: | | AUTO LICENSE NO. | ISSUING STATE |
| LAST KNOWN RESIDENCE: | | | | LAST KNOWN EMPLOYMENT | | | |
| FBI NUMBER: | | | | | | | |
| ADDITIONAL INFORMATION: | | | | | | | |
| INVESTIGATIVE AGENCY NAME: **DOD/USPS/FBI/HHS/CDI/OPM** | | | | INVESTIGATIVE AGENCY ADDRESS: | | | |

NOTES:

---

**WARRANT FOR ARREST**

AGENT

FILED

JUN 21 2016

CLERK, U.S. DISTRICT COURT
EASTERN DISTRICT OF CALIFORNIA
BY _____
          DEPUTY CLERK

1:16mj00071 SAB

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

June 2016 Grand Jury

| | |
|---|---|
| UNITED STATES OF AMERICA, | No. CR **CR 16 00412** |
| Plaintiff, | I N D I C T M E N T |
| v. | [18 U.S.C. § 371: Conspiracy to Solicit, Receive, and Pay Illegal Remuneration for Health Care Referrals; 42 U.S.C. §§ 1320a-7b(b)(1)(A), (b)(2)(A): Illegal Remunerations for Health Care Referrals; 18 U.S.C. § 2: Aiding and Abetting and Causing an Act to be Done; 18 U.S.C. §§ 982(a)(7), 981(a)(1)(C), 28 U.S.C. § 2461(c): Criminal Forfeiture] |
| DAVID MICHAEL JENSEN, JOHN PAL SINGH JANDA, MICHAEL STEVEN SINEL, MICHAEL DAVID ROUB, and GARY DEAN SCHOONOVER, | |
| Defendants. | |

The Grand Jury charges:

COUNT ONE

[18 U.S.C. § 371]

I.    GENERAL ALLEGATIONS

At all times relevant to this Indictment:

A.    Defendants and Related Entities

1.    Valley View Drugs, Inc. ("Valley View") was a pharmacy located at 13966 Valley View Avenue, La Mirada, California 90638, within the Central District of California.  Valley View

1  operated primarily as a multi-state mail order pharmacy with the
2  vast majority of its revenue derived from mail order
3  prescriptions and prescription refills, primarily consisting of
4  compounded pain medications.  Between September 2011 and June
5  2015, Valley View billed TRICARE, a health care program of the
6  United States Department of Defense ("DOD") Military Health
7  System, for claims involving 1,810 different TRICARE
8  beneficiaries, of whom only approximately 15 lived within a
9  twenty-mile radius of the Valley View storefront location.

10      2.    Defendant DAVID MICHAEL JENSEN ("defendant JENSEN")
11  owned and operated Valley View since approximately 2000.

12      3.    Pro-Med Marketing, LLC ("Pro-Med Marketing") was a
13  California Limited Liability Company formed in February 2013
14  that purported to provide "marketing consulting services" to
15  pharmacies.  Valley View was Pro-Med Marketing's sole client and
16  funded Pro-Med Marketing to pay "marketers" and physicians to
17  generate prescriptions for compounded pain medications.
18  Unindicted Co-Conspirator A and unindicted Co-Conspirator B
19  formed Pro-Med Marketing with a registered address of 13305 Penn
20  Street, Suite #150, Whittier, California 90602.

21      4.    Western Medical Solutions ("WMS") was a California
22  corporation formed in or about December 2009.  In or about 2011,
23  WMS began recruiting independent contractors to "market"
24  compounded pain medications to physicians on behalf of pharmacy
25  clients.  WMS was operated by unindicted Co-Conspirator C and
26  unindicted Co-Conspirator D at a registered address at 1781 Tara
27  Way, San Marcos, California 92078.

28

2

5.    Defendant GARY DEAN SCHOONOVER ("defendant SCHOONOVER") was retained as an independent contractor by WMS in or around early 2011.  Between in or about March 2011 and in or about 2014, defendant SCHOONOVER, working out of his residence in Clovis, California, "marketed" compounded pain medications to physicians on behalf of Valley View.

6.    Samia Solutions, LLC ("Samia") was a California Limited Liability Company formed by defendants MICHAEL STEVEN SINEL ("defendant SINEL") and MICHAEL DAVID ROUB ("defendant ROUB") on March 26, 2012, with a business address at 28310 Roadside Drive, Suite #137 in Agoura Hills, California.  On or about February 1, 2013, Samia entered into a "Marketing Subagent Agreement" with Pro-Med Marketing designed to generate prescriptions for compounded pain medications for Valley View.

7.    Defendant JOHN PAL SINGH JANDA ("defendant JANDA") was a licensed physician with a medical clinic located at 6045 North First Street, Suite # 103N in Fresno, California.  Between in or about December 2011 and in or about November 2013, defendant JANDA referred at least 148 TRICARE beneficiaries (among many other health care benefit program beneficiaries) to Valley View with prescriptions for compounded pain medications.

8.    Between in or about September 2011 and in or about June 2015, Valley View was paid at least approximately $20,000,000 by "health care benefit programs," as defined by 18 U.S.C. § 24(b), including federal health care programs and private insurers, for claims submitted for compounded pain medications.

3

1       9.    Between in or about September 2011 and in or about
2   June 2015, defendant JENSEN, through Valley View and Pro-Med
3   Marketing, in exchange for compounded medication prescriptions,
4   paid: (a) defendants SINEL and ROUB, through Samia,
5   approximately $4,707,974; (b) WMS approximately $4,596,897, of
6   which, defendant SCHOONOVER received at least approximately
7   $250,000; and (c) defendant JANDA, through an intermediary-
8   relative, P.B., approximately $345,000.

9       B.    TRICARE
10      10.    TRICARE provided health care coverage for DOD
11  beneficiaries world-wide, including active duty service members,
12  National Guard and Reserve members, retirees, their families,
13  and survivors.

14      11.    Individuals who received health care benefits through
15  TRICARE were referred to as TRICARE beneficiaries.    The Defense
16  Health Agency ("DHA"), an agency of the DOD, was the military
17  entity responsible for overseeing and administering the TRICARE
18  program.

19      12.    TRICARE provided coverage for certain prescription
20  drugs, including certain compounded drugs, that were medically
21  necessary and prescribed by a licensed physician.    Express
22  Scripts, Inc. ("Express Scripts") administered TRICARE's
23  prescription drug benefits.

24      13.    TRICARE beneficiaries could fill their prescriptions
25  through military pharmacies, TRICARE's home delivery program,
26  network pharmacies, and non-network pharmacies.    If a
27  beneficiary chose a network pharmacy, the pharmacy would collect
28  any applicable co-pay from the beneficiary, dispense the drug to

4

1  the beneficiary, and submit a claim for reimbursement to Express
2  Scripts, which would in turn adjudicate the claim and reimburse
3  the pharmacy.  To become a TRICARE network pharmacy, a pharmacy
4  agreed to be bound by, and comply with, all applicable State and
5  Federal laws, specifically including those addressing fraud,
6  waste, and abuse.

7      14.  On or about November 3, 2010, Valley View executed a
8  network agreement with TRICARE (through Express Scripts), which
9  authorized Valley View to submit claims for prescription drugs
10 it dispensed to TRICARE beneficiaries.  Valley View updated the
11 agreement with Express Scripts on or about May 23, 2013.

12     15.  Between in or about September 2011, and in or about
13 June 2015, Valley View submitted approximately $10,066,090 in
14 claims to TRICARE, primarily for compounded pain medications,
15 for which TRICARE paid Valley View approximately $9,893,040.

16     C.   MEDICARE

17     16.  Medicare provided benefits to individuals who were 65
18 years and older or disabled.  Medicare was administered
19 by the Centers for Medicare and Medicaid Services ("CMS"), a
20 federal agency under the United States Department of Health and
21 Human Services.

22     17.  Individuals who qualified for Medicare benefits were
23 referred to as Medicare "beneficiaries."  Each beneficiary was
24 given a unique health insurance claim number ("HICN").  Health
25 care providers who provided medical services that were
26 reimbursed by Medicare were referred to as Medicare "providers."

27     18.  To participate in Medicare, a provider was required to
28 submit an application in which the provider agreed to comply

5

1  with all Medicare-related laws and regulations.  If Medicare
2  approved a provider's application, Medicare assigned the
3  provider a Medicare "provider number," which was used for
4  processing and payment of claims.

5      19.  A health care provider with a Medicare provider number
6  could submit claims to Medicare to obtain reimbursement for
7  services and products provided to Medicare beneficiaries.

8      20.  Most providers submitted their claims electronically
9  pursuant to an agreement they executed with Medicare in which
10 the providers agreed that they: (a) were responsible for all
11 claims submitted to Medicare by themselves, their employees, and
12 their agents; (b) would submit claims only on behalf of those
13 Medicare beneficiaries who had given their written authorization
14 to do so; and (c) would submit claims that were accurate,
15 complete, and truthful.

16     21.  Medicare Part D provided coverage for outpatient
17 prescription drugs.  Medicare beneficiaries were able to obtain
18 Part D coverage through: (1) enrollment in one of many
19 prescription drug plans ("PDP"), which covered only prescription
20 drugs and were offered by qualified private insurance plans
21 (often referred to as drug plan "sponsors"), which received
22 reimbursement from Medicare; or (2) a Medicare Advantage plan
23 that covered both prescription drugs and medical services.  A
24 beneficiary was responsible for any deductible or co-payment
25 required under his or her PDP.

26     22.  Medicare reimbursed providers for certain compounded
27 drugs that were medically necessary to the treatment of a
28 beneficiary's illness or injury, were prescribed by a

6

1  beneficiary's physician or a qualified physician's assistant
2  acting under the supervision of a physician, and were provided
3  in accordance with Medicare regulations and guidelines that
4  governed whether a particular service or product would be
5  reimbursed by Medicare.
6      23.  A pharmacy provider was required to provide certain
7  information when filing claims with Medicare.  This information
8  included: identification of the person or entity that provided
9  the medication, identification of the medication that was
10  provided, identification of the prescribing physician,
11  identification of the beneficiary, and the date the prescription
12  was dispensed.
13      24.  Between in or about September 2011 and in or about
14  June 2015, Valley View, which was a Medicare pharmacy provider,
15  submitted approximately $2,504,248 in claims to Medicare for
16  compounded pain medications, for which Medicare paid Valley View
17  approximately $1,108,987.
18      D.    DOL-OWCP
19      25.  The Federal Employees' Compensation Act, Title 5,
20  United States Code, Sections 8101, et seq. ("FECA") provided
21  certain benefits to civilian employees of the United States, for
22  wage-loss disability due to a traumatic injury or occupational
23  disease sustained while working as a federal employee (the "FECA
24  program").
25      26.  The Office of Workers' Compensation Programs ("OWCP"),
26  a component of the Department of Labor ("DOL"), administered the
27  FECA program, which was a federal workers' compensation program
28  focused on return to work efforts and was not a medical

7

1   insurance or a retirement plan.

2       27.  When a qualified employee suffered a work-related

3   injury, the employee filed a claim for coverage with OWCP, which

4   then assigned the claimant an OWCP claim number.

5       28.  To obtain reimbursement for prescription drugs

6   provided to OWCP claimants (hereinafter referred to as

7   beneficiaries), a pharmacy had to submit its prescription claims

8   for payment to OWCP, using the beneficiary's OWCP claim number.

9   By submitting a claim for reimbursement with OWCP, the pharmacy

10  provider certified that the service or product for which

11  reimbursement was sought was medically necessary, appropriate,

12  and properly billed in accordance with accepted industry

13  standards.

14      29.  OWCP would process the claims submitted by the

15  provider, and if all required information was included, OWCP

16  would reimburse the provider in accordance with an established

17  fee schedule.

18      30.  Between in or about September 2011, and in or about

19  June 2015, Valley View submitted approximately $3,589,704 in

20  claims to OWCP under the FECA program for compounded pain

21  medications, for which OWCP paid Valley View approximately

22  $689,521.

23      E.   Federal Health Care Programs

24      31.  Tricare, Medicare, and the FECA program were "Federal

25  health care programs," as defined by 42 U.S.C. § 1320a-7b(f),

26  that affected commerce.

27      32.  Pharmacy providers were prohibited from using personal

28  health care information, which included a patient's name, date

                                8

1  of birth, TRICARE number, Medicare HICN, or OWCP claim number,

2  and other health care information, without the patient's

3  knowledge and consent.

4       F.   Compounded Drugs Background

5       33.  In general, "compounding" was a practice in which a

6  licensed pharmacist, a licensed physician, or, in the case of an

7  outsourcing facility, a person under the supervision of a

8  licensed pharmacist, combines, mixes, or alters ingredients of a

9  drug or multiple drugs to create a drug tailored to the needs of

10  an individual patient.  Compounded drugs were not FDA-approved,

11  that is, the FDA did not verify the safety, potency,

12  effectiveness, or manufacturing quality of compounded drugs.

13  The California State Board of Pharmacy regulated the practice of

14  compounding in the State of California.

15       34.  Compounded drugs were prescribed by a physician when

16  an FDA-approved drug did not meet the health needs of a

17  particular patient.  For example, if a patient was allergic to a

18  specific ingredient in an FDA-approved medication, such as a dye

19  or a preservative, a compounded drug would be prepared excluding

20  the substance that triggered the allergic reaction.  Compounded

21  drugs would also be prescribed when a patient could not consume

22  a medication by traditional means, such as an elderly patient or

23  a child who could not swallow an FDA-approved pill and needed

24  the drug in a liquid form that was not otherwise available.

25  II.  OBJECTS OF THE CONSPIRACY

26       35.  Beginning in or about September 2011, and continuing

27  to in or about June 2015, in Los Angeles and Fresno Counties,

28  within the Central and Eastern Districts of California, and

9

elsewhere, defendant JENSEN, joined by defendants SINEL and ROUB
from in or about May 2012 to in or about February 2015,
defendant SCHOONOVER from in or about April 2011 to in or about
February 2013, and defendant JANDA from in or about December
2011 to in or about November 2013, together with unindicted Co-
Conspirators A, B, C, and D, and others known and unknown to the
Grand Jury, knowingly combined, conspired, and agreed to commit
the following offenses against the United States:

a. Knowingly and willfully soliciting or receiving
remuneration in return for referring an individual to a person
for the furnishing or arranging for the furnishing of any item
or service for which payment may be made in whole or in part
under a Federal health care program, in violation of Title 42,
United States Code, Section 1320a-7b(b)(1)(A); and

b. Knowingly and willfully offering to pay or paying
any remuneration to any person to induce such person to refer an
individual to a person for the furnishing or arranging for the
furnishing of any item or service for which payment may be made
in whole or in part under a Federal health care program, in
violation of Title 42, United States Code, Section 1320a-
7b(b)(2)(A).

III. THE MANNER AND MEANS OF THE CONSPIRACY

36. The objects of the conspiracy were carried out, and to
be carried out, in substance, as follows:

a. Valley View, Pro-Med Marketing, defendants
JENSEN, JANDA, SINEL, ROUB, and SCHOONOVER, and their co-
conspirators would make and receive undisclosed payments in
connection with the prescription of compounded pain medications

10

1    to beneficiaries.  These payments would include: (1) payments

2    from Valley View to "marketers" in exchange for referring

3    beneficiaries and their prescriptions for compounded pain

4    medications to Valley View; and (2) payments from Valley View to

5    physicians in exchange for prescribing certain compounded pain

6    medications to beneficiaries for dispensing at Valley View.

7              b.    In an attempt to disguise the illegal nature of

8    the payments from Valley View to "marketers" and prescribing

9    physicians, defendant JENSEN, Co-Conspirator A, Co-Conspirator

10   B, and other co-conspirators, would form Pro-Med Marketing in

11   February 2013, and use it as follows:

12             (1) Pro-Med Marketing would be funded entirely by

13   Valley View to pay "marketers" and prescribing physicians

14   referral fees for steering compounded pain medication

15   prescriptions for TRICARE beneficiaries and others to Valley

16   View.

17             (2) Valley View and Pro-Med Marketing would pay

18   the referral fees to "marketers" and disguise the payments as

19   commission fees under sham marketing agreements designated

20   "Marketing Subagent Agreements."

21             (3) The sham marketing agreements entered into

22   between Pro-Med Marketing and various "marketers" would:

23   (a) falsely purport to be "for the purpose of providing

24   information to the community" concerning compounded drugs on

25   behalf of a group of pharmacies, when, in reality, the

26   agreements were exclusively for the referral of compounded pain

27   medication prescriptions to a single pharmacy, namely, Valley

28   View; (b) provide for prescription-based compensation of

11

1   approximately 33% to 50% (and occasionally even more) of the
2   gross revenue received by Valley View (and purportedly other
3   pharmacies) on claims submitted to health care benefit programs;
4   (c) contain several provisions specifically identifying
5   prohibitions against the referral of patients and related health
6   care laws; and (d) in earlier versions of the agreements,
7   identify a nominal commission compensation amount of 10% of
8   total revenue collected for non-insurance beneficiaries (i.e.,
9   "Cash [walk-in] Patients").

10              c.    Based on the referral fees Valley View offered,
11  "marketers," including defendants SINEL, ROUB, and SCHOONOVER:

12                   (1) would solicit physicians to authorize
13  prescriptions for compounded pain medications for beneficiaries;
14  and

15                   (2) would present prescribing physicians with
16  pre-printed prescriptions for compounded pain medication
17  combinations specifically selected to maximize the amount
18  federal health care benefit programs, particularly TRICARE,
19  would reimburse for each prescription (based on established
20  reimbursement schedules), without any regard for the medical
21  necessity of the prescription.

22              d.    The prescribing physicians, including defendant
23  JANDA, would typically authorize the pre-printed prescriptions:
24  (1) with no prior physician/patient relationship with the
25  beneficiaries; (2) without the knowledge of the purported
26  beneficiaries; and/or (3) without considering an FDA-approved
27  (i.e. non-compounded) prescription drug for the patient.

28

                                  12

1          e.     The prescribing physicians would typically be
2   paid either a fixed amount for each prescription authorized, or,
3   as was the case for defendant JANDA, a percentage of the gross
4   revenue received by Valley View for each prescription.

5          f.     In an effort to conceal the referral payments
6   they were receiving, prescribing physicians who would receive a
7   percentage of Valley View's gross revenue for each prescription,
8   including defendant JANDA, would have Pro-Med Marketing pay
9   referral fees to loosely related or trusted individuals, instead
10  of directly to them.

11         g.     Instead of providing compounded pain medication
12  prescriptions directly to beneficiaries, who would then be free
13  to select a pharmacy, "marketers," including defendants SINEL,
14  ROUB, and SCHOONER, or prescribing physicians, including
15  defendant JANDA, would deliver the prescriptions directly to
16  Valley View for dispensing via facsimile.

17         h.     Defendants JENSEN, JANDA, SINEL, ROUB, and
18  SCHOONOVER, along with other co-conspirators, would prescribe
19  and cause to be prescribed compounded pain medications to be
20  dispensed at Valley View for federal health care program
21  beneficiaries, who typically would fall into one of three
22  general categories:  (1) beneficiaries who had their personally
23  identifying health information misappropriated and used for
24  compounded pain medication prescriptions without their
25  knowledge; (2) beneficiaries who had an existing
26  patient/physician relationship with a prescribing physician, but
27  who never discussed or requested a compounded pain medication or
28  refill from the physician; or (3) beneficiaries who discussed

13

compounded pain medications with their respective physicians,
but who did not have a medical need for such a prescription, as
opposed to an analogous FDA-approved drug.

        i.    In order to track referral fees, defendant
JENSEN, along with other co-conspirators, would make several
arrangements, including: (1) assigning "marketers" unique
identifier codes for tracking purposes; (2) requiring
prescriptions generated by "marketers" to bear the "marketers'"
assigned codes; (3) using computer software programs for billing
and prescription tracking, and giving co-conspirator "marketers"
access to certain software programs to facilitate the tracking
of referral fees; and (4) regularly preparing and emailing co-
conspirators detailed spreadsheets that tracked referral fees
owed to "marketers" and prescribing physicians based on each
prescription dispensed at Valley View.  These spreadsheets would
often include the health care benefit program applicable to the
beneficiary and prescription, including TRICARE, Medicare, and
the FECA program.

        j.    Defendant JENSEN, through Valley View, would
direct that payments for compounded prescription claims Valley
View submitted to TRICARE, Medicare, the FECA program, and other
federal health care programs be deposited into Valley View's
business bank account at Bank of the West, account number ending
in 6710 ("the Valley View Bank of the West Account"), which
defendant JENSEN controlled.

        k.    Defendant JENSEN would cause Valley View to
transfer large sums of money to Pro-Med Marketing -- typically
$500,000 or more per transfer -- to pay referral fees on

14

prescriptions generated by "marketers," including defendants
SINEL, ROUB, and SCHOONOVER, and prescribing physicians,
including defendant JANDA.  The funds for these transfers to
Pro-Med Marketing would come from TRICARE, Medicare, the FECA
program, and other federal health care programs, as payment on
compounded pain medication prescription claims.

     l.   Defendant JENSEN, Co-Conspirator A, Co-
Conspirator B, and other co-conspirators would cause Pro-Med
Marketing to pay referral fees on prescriptions generated by
"marketers," including defendants SINEL, ROUB, and SCHOONOVER,
and prescribing physicians, including defendant JANDA, from Pro-
Med Marketing's business bank account at Bank of the West,
account number ending in 294 ("the Pro-Med Marketing Bank of the
West Account").

     m.   Between in or around September 2011 and in or
around June 2015, defendant JENSEN and other co-conspirators
would cause Valley View to bill TRICARE $10,066,090, and, on the
basis of these claims, TRICARE would pay Valley View a total
amount of approximately $9,893,040 for compounded pain
medications dispensed to TRICARE beneficiaries.

     n.   Between in or around September 2011 and in or
around June 2015, defendant JENSEN and other co-conspirators
would cause Valley View to bill Medicare $2,504,248, and, on the
basis of these claims, Medicare would pay Valley View a total
amount of approximately $1,108,987 for compounded pain
medications dispensed to Medicare beneficiaries.

     o.   Between in or around September 2011 and in or
around June 2015, defendant JENSEN and other co-conspirators

15

1  would cause Valley View to bill OWCP $3,589,704, and, on the
2  basis of these claims, OWCP would pay Valley View a total amount
3  of approximately $689,521 for compounded pain medications
4  dispensed to FECA program beneficiaries.
5  IV.  OVERT ACTS
6       37.  On or about the following dates, in furtherance of the
7  conspiracy and to accomplish its objects, defendants JENSEN,
8  JANDA, SINEL, ROUB, and SCHOONOVER, Unindicted Co-Conspirators
9  A, B, C, and D, and other co-conspirators, committed and
10  willfully caused others to commit the following overt acts,
11  among others, within the Central District of California and
12  elsewhere:
13      Overt Act No. 1:    On or about June 12, 2012, defendant
14  JENSEN, Co-Conspirator C, and Co-Conspirator D caused an ACH
15  electronic deposit from WMS to be made to defendant SCHOONOVER
16  in the amount of $6,464.57.
17      Overt Act No. 2:    On or about January 30, 2012, defendant
18  JENSEN caused Valley View to issue check number 73461, drawn on
19  the Valley View Bank of the West Account, in the amount of
20  $19,532.13, payable to a relative of defendant JANDA, P.B, for
21  the ultimate benefit of defendant JANDA.
22      Overt Act No. 3:    On or about January 29, 2013, defendant
23  SCHOONOVER caused a facsimile of a compounded pain medication
24  prescription for a Medicare beneficiary, M.B., to be sent from
25  Physician A's medical clinic, located in Fresno, California, to
26  Valley View, located in La Mirada, California.
27      Overt Act No. 4:    On or about February 4, 2013, defendant
28  JENSEN, Co-Conspirator A, and Co-Conspirator B caused Pro-Med

16

1  Marketing to file its Articles of Organization with the
2  California Secretary of State.

3      Overt Act No. 5:    On or about September 18, 2013,
4  defendant JANDA caused a sixteen-page facsimile of compounded
5  pain medication prescriptions for at least seven different
6  health care benefit program beneficiaries to be sent from his
7  medical clinic, located in Fresno, California, to Valley View,
8  located in La Mirada, California.

9      Overt Act No. 6:    On or about November 7, 2013, defendant
10 JANDA caused a facsimile of a compounded pain medication
11 prescription for a TRICARE beneficiary, D.H., to be sent from
12 his medical clinic, located in Fresno, California, to Valley
13 View, located in La Mirada, California.

14     Overt Act No. 7:    On or about August 4, 2014, defendant
15 JENSEN, Co-Conspirator A, and Co-Conspirator B caused Pro-Med
16 Marketing to issue check number 0777, drawn on Pro-Med
17 Marketing's Bank of the West Account, in the amount of
18 $55,848.21, payable to "Samia Solutions LLC," for the benefit of
19 defendants SINEL and ROUB.

20     Overt Act No. 8:    On or about October 14, 2014, defendant
21 JENSEN caused Valley View to issue check number 78090, drawn on
22 the Valley View Bank of the West Account, in the amount of
23 $600,000, payable to Pro-Med Marketing.

24     Overt Act No. 9:    On or about January 8, 2015, defendant
25 JENSEN caused Pro-Med Marketing to email a letter attachment
26 purporting to be "from Pro-Med Marketing's Legal Counsel
27 regarding government programs" to various third-party "marketing
28 representatives."   After citing the "Federal Anti-Kickback

17

1  Statute" and noting the need for "restrictions on marketing
2  practices" and "methods of compensating marketers," the letter
3  referenced the creation of a "Professional Employer Organization
4  ('PEO')" to "safeguard the compensation arrangements amongst
5  Pro-Med Marketing[], Valley View[], and you" [referring to
6  recipient "marketers"].  The letter further noted that because
7  "commission payments to marketing representatives, that are
8  independent contractors, may be prohibited by Federal and most
9  State laws," Pro-Med Marketing would be circulating new
10  marketing agreements that essentially re-characterized the
11  "marketers" as *bona fide* employees.  The email distribution of
12  the letter included dozens of co-conspirators, including
13  defendants JENSEN and SCHOONOVER.

14      Overt Act No. 10:    In or around April 2015, defendant
15  JENSEN caused Valley View to submit a claim to TRICARE in the
16  amount of approximately $3,000 for a compounded pain medication
17  prescription, but dispensed the same compounded pain medication
18  formulary for approximately $190 to an individual, who defendant
19  JENSEN and other Valley View employees believed was an actual
20  walk-in customer, but who was, in fact, an undercover
21  investigator for the California Department of Insurance.

22

23

24

25

26

27

28

18

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

COUNTS TWO THROUGH SIX

[42 U.S.C. § 1320a-7b(b)(2)(A); 18 U.S.C. § 2(b)]

38.  The Grand Jury hereby repeats and realleges paragraphs 1 through 34, 36, and 37 of this Indictment as if fully set forth herein.

39..  On or about the following dates, in Los Angeles County, within the Central District of California, and elsewhere, defendant JENSEN knowingly and willfully offered and paid, and willfully caused to be offered and paid, remuneration, that is, either checks or wire transfers payable in or about the amounts set forth below, to defendants SINEL, ROUB, JANDA, SCHOONOVER, and others known and unknown to the Grand Jury, for their referrals of patients to Valley View with prescriptions for compounded drugs for which payment could be made in whole and in part under a Federal health care program, including TRICARE, Medicare, and the FECA program:

| COUNT | APPROXIMATE DATE | REMUNERATION |
|-------|------------------|--------------|
| TWO | 1/3/2012 | Check number 73461, drawn on the Valley View Bank of the West Account, in the amount of $19,532.13, payable to P.B. (for the benefit of defendant JANDA) |
| THREE | 6/12/2012 | ACH Electronic Deposit, from Western Medical Solutions' JP Morgan Chase account, to defendant SCHOONOVER in the amount of $6,464.57 |

19

| COUNT | APPROXIMATE DATE | REMUNERATION |
|-------|------------------|--------------|
| FOUR | 01/15/2013 | Check number 75283, drawn on the Valley View Bank of the West Account, in the amount of $17,256.47, payable to Samia Solutions LLC (for the benefit of defendants SINEL and ROUB) |
| FIVE | 11/04/2013 | Check number 260, drawn on the Pro-Med Marketing Bank of the West Account, in the amount of $19,317.51, payable to P.B. (for the benefit of defendant JANDA) |
| SIX | 8/4/2014 | Check number 0777, drawn on the Pro-Med Marketing Bank of the West Account, in the amount of $55,848.21, payable to Samia Solutions LLC (for the benefit of defendants SINEL and ROUB) |

20

1               COUNTS SEVEN THROUGH ELEVEN

2       [42 U.S.C. § 1320a-7b(b)(1)(A); 18 U.S.C. § 2(b)]

3      40.   The Grand Jury hereby repeats and realleges paragraphs

4 1 through 34, 36, and 37 of this Indictment as if fully set

5 forth herein.

6      41.   On or about the following dates, in Los Angeles and

7 Fresno Counties, within the Central and Eastern Districts of

8 California, and elsewhere, defendant JANDA knowingly and

9 willfully solicited and received, and willfully caused to be

10 solicited and received, remuneration, that is, checks payable in

11 or about the amounts set forth below, in return for referring

12 patients to Valley View with prescriptions for compounded pain

13 medications for which payment could be made in whole and in part

14 under a Federal health care program, including TRICARE,

15 Medicare, and the FECA program:

| COUNT | APPROXIMATE DATE | REMUNERATION |
|-------|------------------|--------------|
| SEVEN | 12/8/2011 | Check number 73355, drawn on the Valley View Bank of the West Account, in the amount of $18,131.80, payable to P.B. (for the benefit of defendant JANDA) |
| EIGHT | 1/3/2012 | Check number 73461, drawn on the Valley View Bank of the West Account, in the amount of $19,532.13, payable to P.B. (for the benefit of defendant JANDA) |

21

| COUNT | APPROXIMATE DATE | REMUNERATION |
|---|---|---|
| NINE | 5/01/2013 | Check number 144, drawn on the Pro-Med Marketing Bank of the West Account, in the amount of $19,199.28, payable to P.B. (for the benefit of defendant JANDA) |
| TEN | 8/01/2013 | Check number 208, drawn on the Pro-Med Marketing Bank of the West Account, in the amount of $24,331.78, payable to P.B. (for the benefit of defendant JANDA) |
| ELEVEN | 11/04/2013 | Check number 260, drawn on the Pro-Med Marketing Bank of the West Account, in the amount of $19,317.51, payable to P.B. (for the benefit of defendant JANDA) |

1              COUNTS TWELVE THROUGH SIXTEEN

2        [42 U.S.C. § 1320a-7b(b)(1)(A); 18 U.S.C. § 2(b)]

3        42.   The Grand Jury hereby repeats and realleges paragraphs

4    1 through 34, 36, and 37 of this Indictment as if fully set

5    forth herein.

6        43.   On or about the following dates, in Los Angeles

7    Fresno, and San Diego Counties, within the Central, Eastern, and

8    Southern Districts of California, and elsewhere, defendant

9    SCHOONOVER knowingly and willfully solicited and received, and

10   caused to be solicited and received, remuneration, that is, wire

11   transfers payable in or about the amounts set forth below, in

12   return for referring patients to Valley View with prescriptions

13   for compounded pain medications for which payment could be made

14   in whole and in part under a Federal health care program,

15   including TRICARE, Medicare, and the FECA program:

| COUNT | APPROXIMATE DATE | REMUNERATION |
|-------|------------------|--------------|
| TWELVE | 6/12/2012 | ACH Electronic Deposit, from Western Medical Solutions' JP Morgan Chase account, to defendant SCHOONOVER in the amount of $6,464.57 |
| THIRTEEN | 10/16/2012 | ACH Electronic Deposit, from Western Medical Solutions' JP Morgan Chase account, to defendant SCHOONOVER in the amount of $4,901.80 |

26   ///

27   ///

28   ///

23

| COUNT | APPROXIMATE DATE | REMUNERATION |
|-------|-----------------|--------------|
| FOURTEEN | 11/07/2012 | ACH Electronic Deposit, from Western Medical Solutions' JP Morgan Chase account, to defendant SCHOONOVER in the amount of $8,193.68 |
| FIFTEEN | 2/25/2013 | ACH Electronic Deposit, from Western Medical Solutions' JP Morgan Chase account, to defendant SCHOONOVER in the amount of $4,810.23 |
| SIXTEEN | 2/25/2013 | ACH Electronic Deposit, from Western Medical Solutions' JP Morgan Chase account, to defendant SCHOONOVER in the amount of $2,508.22 |

24

```
 1                   COUNTS SEVENTEEN THROUGH TWENTY

 2           [42 U.S.C. § 1320a-7b(b)(1)(A); 18 U.S.C. § 2]

 3       44.  The Grand Jury hereby repeats and realleges paragraphs

 4   1 through 34, 36, and 37 of this Indictment as if fully set

 5   forth herein.

 6       45.  On or about the following dates, in Los Angeles

 7   County, within the Central District of California, and

 8   elsewhere, defendants SINEL and ROUB, each aiding and abetting

 9   the other, knowingly and willfully solicited and received, and

10   willfully caused to be solicited and received, remuneration,

11   that is, checks payable in or about the amounts set forth below,

12   in return for referring patients to Valley View with

13   prescriptions for compounded pain medications for which payment

14   could be made in whole and in part under a Federal health care

15   program, including TRICARE, Medicare, and the FECA program:
```

| COUNT | APPROXIMATE DATE | REMUNERATION |
|---|---|---|
| SEVENTEEN | 10/2/2012 | Check number 74722, drawn on the Valley View Bank of the West Account, in the amount of $37,238.26, payable to Samia Solutions LLC |
| EIGHTEEN | 01/15/2013 | Check number 75283, drawn on the Valley View Bank of the West Account, in the amount of $17,256.47, payable to Samia Solutions LLC |

| COUNT | APPROXIMATE DATE | REMUNERATION |
|-------|------------------|--------------|
| NINETEEN | 01/22/2013 | Check number 75342, drawn on the Valley View Bank of the West Account, in the amount of $17,220.48, payable to Samia Solutions LLC |
| TWENTY | 8/4/2014 | Check number 0777, drawn on the Pro-Med Marketing Bank of the West Account, in the amount of $55,848.21, payable to Samia Solutions LLC |

26

1         FORFEITURE ALLEGATION

2    [18 U.S.C. §§ 982(a)(7), 981(a)(1)(C); 28 U.S.C. § 2461(c)]

3         46.   Pursuant to Rule 32.2(a), Fed. R. Crim. P., notice is

4    hereby given to defendants JENSEN, JANDA, SINEL, ROUB and

5    SCHOONOVER (collectively, the "defendants") that the United

6    States will seek forfeiture as part of any sentence in

7    accordance with Title 18, United States Code, Sections 982(a)(7)

8    and 981(a)(1)(C) and Title 28, United States Code, Section

9    2461(c), in the event of any defendant's conviction under any of

10   Counts One through Twenty of this Indictment.

11        47.   Defendants shall forfeit to the United States the

12   following property:

13             a.   all right, title, and interest in any and all

14   property, real or personal, that constitutes or is derived,

15   directly or indirectly, from the gross proceeds traceable to the

16   commission of any offense set forth in any of Counts One through

17   Twenty of this Indictment including, but not limited to, the

18   following funds seized from bank accounts on or about July 6,

19   2015, pursuant to federal seizure warrants: (i) approximately

20   $8,488,673.61 in funds seized from a Bank of the West account

21   with the last four digits ending in 6710; (ii) approximately

22   $700,000.00 in funds seized from a Friendly Hills Bank account

23   with the last four digits ending in 6648; (iii) approximately

24   $500,000.00 in funds seized from a Bank of the West account with

25   the last four digits ending in 3294; and (iv) approximately

26   $271,121.45 in funds seized from a Friendly Hills Bank account

27   with the last four digits ending in 6655; and

28

27

1        b.    a sum of money equal to the total value of the
2   property described in subparagraph a.  For each of Counts one
3   through Twenty of this Indictment for which more than one
4   defendant is found guilty, each such defendant shall be jointly
5   and severally liable for the entire amount forfeited pursuant to
6   that Count.
7        48.  Pursuant to Title 21, United States Code, Section
8   853(p), as incorporated by Title 28, United States Code, Section
9   2461(c), and Title 18, United States Code, Section 982(b), each
10  defendant shall forfeit substitute property, up to the total
11  value of the property described in the preceding paragraph if,
12  as a result of any act or omission of a defendant, the property
13  described in the preceding paragraph, or any portion thereof:
14  (a) cannot be located upon the exercise of due diligence;
15  (b) has been transferred, sold to or deposited with a third
16  party; (c) has been placed beyond the jurisdiction of the Court;
17  ///
18  ///
19  ///
20
21
22
23
24
25
26
27
28

1 │ (d) has been substantially diminished in value; or (e) has been

2 │ commingled with other property that cannot be divided without

3 │ difficulty.

4 │

5 │                              A TRUE BILL

6 │

7 │                              _____/S/_____
      │                              Foreperson

8 │

9 │ EILEEN M. DECKER
      │ United States Attorney

10 │

11 │

12 │ LAWRENCE S. MIDDLETON
      │ Assistant United States Attorney
      │ Chief, Criminal Division

13 │

14 │ GEORGE S. CARDONA
      │ Assistant United States Attorney
      │ Chief, Major Frauds Section

15 │

16 │ LIZABETH A. RHODES
      │ Assistant United States Attorney
      │ Chief, General Crimes Section

17 │

18 │ STEPHEN A. CAZARES
      │ Assistant United States Attorney
      │ Deputy Chief, Major Frauds Section

19 │

20 │ CATHY J. OSTILLER
      │ Assistant United States Attorney
      │ Deputy Chief, General Crimes Section

21 │

22 │ MARK AVEIS
      │ Assistant United States Attorney
      │ Major Frauds Section

23 │

24 │ ASHWIN JANAKIRAM
      │ Special Assistant United States Attorney
      │ General Crimes Section

25 │

26 │

27 │

28 │

                              29